**THE EVELYN et al. v. GREGORY.**

**THE MONOCACY.**

**THE TUCKAHOE.**

**No. 5809.**

United States Court of Appeals Fourth Circuit.

Dec. 7, 1948.

Leon T. Seawell, of Norfolk, Va., for appellants.

Henry E. Howell, Jr. and R. Arthur Jett, both of Norfolk, Va., for appellee.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and CHESNUT, District Judge.

DOBIE, Circuit Judge.

In the United States District Court for the Eastern District of Virginia, J. P.

Gregory, owner of the barges Monocacy and Tuckahoe, filed a libel in admiralty against the motor tug Evelyn and her owner, C. G. Willis. The libel sought damages for injuries to these barges, which, in tow of the tug, straddled the stern of the tug, when the tug ran aground. The District Court held that those in charge of the tug were negligent, that this negligence caused the damage to the barges and that those in charge of the barges were free from fault. From a final decree in favor of libellant, an appeal to us has been taken.

The motor tug Evelyn is 69 feet long, 20.1 feet beam, equipped with a diesel engine of 400 h. p., and had a draft of 8.5 feet. On August 3, 1946, the tug Evelyn took in tow on Portsmouth Flats, in Norfolk Harbor, the barges Monocacy and Tuckahoe bound for Savannah, Georgia, via the Intracoastal Waterway. The barges Monocacy and Tuckahoe, each 200.4 feet long, 23.8 feet beam, at the time of the accident were light and had a draft of about 4.5 feet. At the time of the grounding of the tug, the barges were being towed astern of the tug on hawsers approximately 75 feet in length, running from the bow of each barge to the stern towing bitt of the tug. The two barges were made fast side by side by two breast lines and two spring lines.

About 8:15 A.M., on August 6, 1946, the tug and barges approached Lockwood's Folly Inlet, an inlet from the Atlantic Ocean into the Intracoastal Waterway, near Southport, North Carolina. The weather was clear, the tide low and the wind light. The course of the tug and barges was in a westerly direction, the Atlantic Ocean on the south and the mainland on the north.

Lockwood's Folly Inlet is subject to strong currents sweeping in and out of the waterway. Prior to December, 1945, the channel in the Intracoastal Waterway at the point of the grounding of the tug opposite Lockwood's Folly Inlet, had been straight. Extensive dredging operations were performed in December, 1945, and January, 1946, for the purpose of relocating the channel 150 feet to the northward in order to eliminate, or minimize, the effect of the current on the pre-existing straight channel. This relocation of the channel produced an "elbow" turn in the channel opposite Lockwood's Folly Inlet at the point of the grounding of the tug, whereas, prior to the relocation of the channel in January, 1946, the channel here had been straight. The United States in appropriate notice to mariners called attention to this change in the channel, to the relocation of Buoy No. 46 and the establishment of a new buoy, No. 46-A.

The District Court's crucial finding of fact, Number 7, reads as follows:

"7. The Tug Evelyn in proceeding through the Intracoastal Waterway at Lockwood's Folly Inlet navigated on a straight course and to the south of the channel and ran aground, which grounding caused the tug to stop abruptly, and the barges Monocacy and Tuckahoe which were then being towed on a hawser of seventy-five feet and tied together as previously described, to straddle the tug. The tug gave no warning signal at the time of or prior to the grounding. The port side of the bow of the Monocacy came in heavy contact with the starboard quarter of the tug Evelyn and the starboard side of the Tuckahoe came in heavy contact with the port quarter of the tug Evelyn causing substantial damage to both barges. The Evelyn did not slow down prior to the stranding."

The following conclusions of law were entered by the District Court:

"1. The proximate cause of the damage suffered by the Monocacy and Tuckahoe was the negligent operation of the Evelyn in proceeding in the Intracoastal Waterway opposite Lockwood's Folly Inlet, south of the channel.

"2. The evidence does not disclose an opportunity available to the barges Monocacy and Tuckahoe to avoid the collision with the stern of the tug after the tug had grounded.

"3. The respondent has failed to adduce evidence to overcome the prima facie case on behalf of libellant established by the occurrence of the grounding.

"4. Libellant is entitled to recover his damages, together with costs, of the offending respondents, the tug Evelyn and her owner, C. G. Willis."

In his opinion, the District Judge stated:

"The authorities indisputably apply the doctrine of, or at least one similar to, res ipsa loquitur in common law, which casts not the burden upon the respondent (because that always remains upon the libellant), but creates from the happening of the grounding a prima facie case of negligence on the part of the respondent and makes a prima facie case on behalf of the libellant. From that point on, the duty of the respondent is to adduce evidence that neutralizes, or overcomes, the prima facie case made."

See (decided by our Court) The Anaconda, 164 F.2d 224, 228; The Wyomissing, 2 Cir., 228 F. 186, 187; The Arlington, 2 Cir., 19 F.2d 285, 286, 54 A.L.R. 101.

We see no reason for disturbing the findings of fact and conclusions of law handed down by the District Court, so its decree must be affirmed.

The correctness of the District Court's finding that the tug Evelyn was, at the time of the grounding, in the old channel and not in the relocated channel was rather convincingly shown by the evidence of Captain Caddell of the tug:

"Q. Captain, in 1944 and 1945, when you went through the Intracoastal Waterway at Lockwood's Folly Inlet, did you steer the same course that you have indicated on the chart that you steered in August, 1946? A. Yes, I steered the same course.

"Q. Had there been any change in the channel between your passage through there in 1945 and your passage through there in August, 1946? A. No; the same passage.

"Q. The same passage through there. Had there been any new markers put up, or any new day beacons put up there? A. Not any new ones added, no.

"Q. So whatever you had experienced in passing through there in 1945, that experience was good in 1946 * * *; is that correct? A. The same canal."

Captain Caddell further testified, in indicating his course upon a chart submitted to him: "Q. Will you put a green line indicating your course across there? A.

Straight up the cut (marking on the chart)." The evidence clearly shows that the relocated channel was not straight but was in the form of an elbow. The District Court's finding here was further confirmed by the testimony of Morris, who was in charge of the barge Tuckahoe. Libellant also introduced testimony tending to show Captain Caddell's ignorance of the precise condition of the tide and of the force and effect of the currents at the scene of the accident. Riggin, in charge of the barge Monocacy, testified that Captain Caddell, who came aboard this barge shortly after the grounding of the tug, made the statement: "I was going a little too fast and I was a little too much to the port."

Captain Caddell also testified: "Q. As you were going through the cut at Lockwood's Folly Inlet, in what part of the channel were you navigating? A. The middle of the channel." His explanation of the grounding was that a bar or hump had formed in the middle of the channel. A survey of the United States Army Engineers, based on actual soundings, showed that on July 30–31, 1946, (the accident occurred in the early morning of August 6, 1946) there was a depth of 17 feet of water in the middle of the channel. The formation, in so short a period of time, of a bar or hump upon which the tug (drawing only 8½ feet) could have grounded in mid-channel is, at best, highly improbable.

We must also uphold the District Court's finding that those in charge of the barges were free of fault. Captain Caddell testified that immediately upon the grounding of the tug he blew danger signals on his whistle. This was denied by Captain Riggin of the barge Monocacy and Captain Morris of the barge Tuckahoe. Mate Piner of the tug, who was asleep at the time of the grounding, testified that he heard no signal. The District Court expressly found that no such signal was given.

At the admitted speed of 6 knots, the tug was going 10 feet a second. Since the barges were about 75 feet behind the tug, this left less than 8 seconds before the barges would reach the tug. There was, too, evidence that those in charge of the barges took steps which served to mini-

mize the damage to the barges, though these steps did not avoid the straddling of the tug by the barges. We cannot, therefore, disturb the conclusion of the District Court that there was no opportunity available to the barges to avoid the collision.

We deem it unnecessary to discuss other points in this case. The decree of the District Court is affirmed.

Affirmed.