**HUMBLE OIL & REFINING COMPANY**

v.

**TUG CROCHET, her engines, etc., M. L. Crochet Towing Co., Inc., and the United States of America.**

**No. 8051.**

United States District Court
E. D. Louisiana,
New Orleans Division.
Aug. 14, 1968.

---

Walter Carroll, Jr., Terriberry, Rault, Carroll, Yancey & Farrel, New Orleans, La., for plaintiff.

Thomas F. McGovern, Atty., Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., Louis C. LaCour, U. S. Atty., James D. Carrier, and Kathleen Ruddell, Asst. U. S. Attys., for respondent-impleaded United States of America.

Lemle & Kelleher, by Charles E. Lugenbuhl, Trial Atty., New Orleans, La., for claimant-respondent, M. L. Crochet Towing Co., Inc.

Taylor, Porter, Brooks, Fuller & Phillips, by Tom F. Phillips, Baton Rouge, La., for Cargill, Inc., third-party defendant.

MITCHELL, District Judge.

Libelant, Humble Oil & Refining Company, filed suit against the Tug *Crochet* and her owner, M. L. Crochet Towing Co., Inc. and the United States of America for damages allegedly sustained when Humble's *Esso Barge 261* sank while being pushed by the Tug *Crochet* as a result of striking a partially submerged barge in the Mississippi River at Red Eye Crossing. Libelant contends that the accident was caused by the negligence and unseaworthiness of the tug and, additionally, by the negligence of the United States of America in failing to properly mark and light the sunken barge or, alternatively, to remove or destroy her.

Crochet Towing Co., Inc. impleaded Cargill, Inc., the owner of the sunken barge, and the United States of America on the grounds of their alleged failure to either properly mark or light the sunken barge and, alternatively, to either remove or destroy her. Thereafter, the United States filed a cross claim against Cargill, Inc.

The court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

#### I.

At all times material hereto libelant, Humble Oil & Refining Company, was a

Delaware corporation which owned the steel tank barge *Esso Barge No. 261*, official No. 254089, and the cargo laden therein.

## II.

At all times material hereto M. L. Crochet Towing Co., Inc., was a Louisiana corporation which owned and operated the Tug *Crochet*, official No. 266869.

## III.

At all times material hereto Cargill, Inc., a Delaware corporation, was the owner and operator of the sunken Barges *L1* and *M65*.

## IV.

During August, 1964, the *Crochet* was regularly engaged in towing *Esso Barge No. 261* and/or other barges, laden with cargoes of asphalt, from the Esso Refinery at Baton Rouge, Louisiana, to Mobile, Alabama. She made approximately one trip a week.

## V.

At about 10:00 PM on the night of August 28, 1964, the *Crochet* and her tow, the *Esso Barge No. 261*, made up ahead and loaded with asphalt, departed the Esso dock at Baton Rouge bound for Mobile.

## VI.

From the time she departed from the dock until the stranding, the *Crochet* was in the sole charge of her mate, Gillis Naquin, who was making the trip for the first time. He was the only person awake on the flotilla at this time. Her captain, Thaddius Bourg, was asleep.

## VII.

About one-half hour after her departure from the dock, the *Crochet*, while in the vicinity of the Dravo Drydock below Baton Rouge, approached Red Eye Crossing.

## VIII.

Visibility in the vicinity of Red Eye Crossing was impaired by virtue of a haze upon the river. Naquin was unable to see the red flashing buoy light which marked the location of a charted barge wreck, located approximately 700–800 feet below and to the side of Red Eye Crossing Channel, so he reduced his speed while attempting to locate the buoy.

## IX.

At this time Naquin was able to see the two range lights on the west bank of the Mississippi River which marked the center of the channel through Red Eye Crossing, and he was also able to see an illuminated overhead power line which he knew to be a short distance upstream of the barge wreck and buoy, which wreck and buoy had been visually observed by him earlier that same afternoon. Also visible were the lights of two upbound towboats in Missouri Bend, below Red Eye Crossing.

## X.

While so proceeding, Naquin allowed the current to take his flotilla beyond the illuminated overhead power crossing and beyond the range marking Red Eye Crossing, resulting in the *Esso Barge No. 261* eventually stranding on the wrecked barge located immediately below Red Eye Crossing, resulting in damage to the *No. 261* and loss of some of her cargo.

## XI.

Afterwards, Naquin and others walked out on the stranded barge, from which point they were able to discern the wreck buoy and to observe that the buoy's flashing red light was not operative.

## XII.

The lighted wreck buoy was owned by the United States of America and maintained by the United States Coast Guard, whose personnel, on August 31, 1964, confirmed that the light on the wreck buoy was inoperative. On August 24, 1964, four days prior to the stranding, an employee of the United States Army Corps of Engineers passed in the vicinity of the buoy and confirmed that it was on location, but did not ascertain whether its flashing red light was operative.

## XIII.

The *L1* and *M65* sank on March 31, 1961 as a result of the failure of Cargill, Inc. to provide adequate mooring lines, lights and watchmen.

## CONCLUSIONS OF LAW

### I.

This Court has jurisdiction of this admiralty cause and the venue is proper.[1]

### II.

■ The Tug *Crochet* was not a common carrier; nor was it the bailee of the towed barge; nor was it an insurer of the barge's safety.[2]

### III.

■ However, the towing vessel and her operators, especially in this instance where the barge was unmanned, were solely responsible for the safe navigation of the flotilla; were obliged to exercise reasonable care and skill as prudent navigators; and were charged with the responsibility for knowledge of the conditions of navigation, including knowledge of channels, depth of water, obstructions, shoals and other dangers known generally to men experienced in navigation.[3]

### IV.

■ Although damage to the tow raises no presumption of fault on the part of the tug, evidence of a grounding or stranding of a barge and tow of a tug establishes a *prima facie* case of negligence on the part of the towing tug.[4]

### V.

■ Not only has the owner of the Tug *Crochet* failed to come forward with any satisfactory explanation of why the *Esso Barge No. 261* was stranded on a known, charted obstacle outside of the well marked and known channel across Red Eye Crossing, but the evidence developed in the case affirmatively shows that the pilot of *Crochet* was negligent in attempting to navigate solely by the wreck buoy, which he did not see, and by ignoring the channel navigation (range) lights which were observed and which identified the safe channel through Red Eye Crossing.

As stated by the court in McWilliams Bros. v. Pennsylvania R. Co.:[5]

"* * * I think, known wrecks must be treated like known but uncharted rocks, and a competent navigator be held to the duty of keeping his vessel and her tow off that which he knows is a danger on the bottom. The only thing which can excuse a deviation from this rule is vis major which is not present here."

### VI.

■ Although under certain circumstances the United States of America may be liable for failure to mark a wreck or for negligently doing so, these circumstances do not exist in the present case. The wreck was properly marked by a buoy the light on which, for some unexplained reason, was extinguished. It is a matter of common knowledge that buoys are liable to be extinguished and that because of this, mariners should not rely completely upon the position or operation of floating aids to navigation but should also utilize bearings from fixed objects and other aids to navigation on shore.[6]

### VIII.

■ In regard to the liability of Cargill, Inc., it is well established that the owner of a wreck that has been negligently sunk is not permitted to escape

1. 28 U.S.C. § 1333, 46 U.S.C. § 741.

2. Stevens v. White City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699, 1932 AMC 468.

3. Severance, 152 F.2d 916 (CA 4–1945) 1946 AMC 128.

4. Reichert Line, 64 F.2d 13 (CA 2–1933) 1933 AMC 785; The Anaconda, 164 F.2d 224 (CA 4–1947) 1947 AMC 1658; The Evelyn v. Gregory, 170 F.2d 899 (CA 4–1958) 1949 AMC 22.

5. 300 F. 687 (S.D. NY–1919).

6. See CFR 62.25–55.

liability to a third party whose vessel is damaged by the wreck.[7]

### IX.

■ Humble Oil & Refining Company is entitled to judgment against M. L. Crochet Towing Co., Inc., its Tug *Crochet* and Cargill, Inc. as joint tortfeasors in the amount of its provable damages, with interest thereon from August 28, 1964, and costs.

### X.

Should the parties be unable to agree on the extent of plaintiff's provable damages the Court will, upon application of either the plaintiff or the defendants, appoint a commissioner to determine damages.

Judgment will be entered accordingly.

7. Jones Towing, Inc. v. United States, 277 F.Supp. 839 (ED La.–1967).