470 F.2d 875
 UNION OIL COMPANY OF CALIFORNIA, Plaintiff-Appellee,
v.
The M/V ISSAQUENA, Her Engines, Etc., In Rem, Defendant,
Security Barge Line, Inc., In Personam, and Security Towing
Company, Inc., In Personam, Defendants-Appellants.
 No. 72-2119.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 3, 1973.
 
 Clayton J. Swank, III, J. Murray Akers, Greenville, Miss., John Teed, Houston, Tex., for defendants-appellants.
 James L. Robertson, Fred C. DeLong, Jr., Greenville, Miss., Robert M. Julian, Houston, Tex., for plaintiff-appellee.
 Before GOLDBERG, AINSWORTH and INGRAHAM, Circuit Judges.
 AINSWORTH, Circuit Judge:
 
 
 1
 This admiralty action grows out of a collision in the Mississippi River between two vessels and their tows. The accident occurred at a point in the river between Cherokee Light and Stewart Bar Light in the vicinity of Mile 865 or 866, between the States of Tennessee and Missouri. The M/V ISSAQUENA (owned by defendant Security Barge Line, Inc.), pushing its tow, was proceeding south and downriver and was involved in collision with the M/V L. W. SWEET (owned by plaintiff Union Oil Company of California), also pushing a tow and proceeding in the same direction, overtaking the ISSAQUENA.
 
 
 2
 The Trial Judge, sitting without a jury, in a detailed written opinion, D. C., 339 F.Supp. 1011, held that the accident and ensuing damages were occasioned through the mutual fault of both vessels and, accordingly, divided the damages, all of which were sustained by plaintiff.[1] Defendant has brought this appeal contending that the findings of the District Judge that there was mutual fault were clearly erroneous under Rule 52(a) of Federal Rules of Civil Procedure, and that the evidence supported a finding that the L. W. SWEET alone was at fault.
 
 
 3
 At about one o'clock in the early morning of August 11, 1968, the ISSAQUENA began the crossing below Cherokee Light at a point where the river makes a sharp right-hand turn and the channel narrows because of a large sandbar in the middle of the river, from 1,400 feet at the upper end to approximately 400 feet at the downstream end. The ISSAQUENA was pushing 25 laden hopper barges with a total length of the tow, including the towboat, of 1,145 feet and a width of 175 feet. At this point the channel must be navigated by flanking so that the tow is diagonally across the channel and is proceeding at a very slow rate of speed. As the ISSAQUENA began the flanking maneuver the captain of the SWEET radioed the ISSAQUENA for permission to overtake and pass it. The SWEET was pushing a tow of 4 empty barges and overall the tow with towboat was 648 feet long with a maximum width of 102 1/2 feet. The captain of the ISSAQUENA informed the captain of the SWEET that he had the channel blocked and did not believe he could be overtaken and passed with safety, but he let the SWEET's captain make the decision what to do and as to whether there was sufficient room to pass. However, the ISSAQUENA's captain did not dissent from the proposed passing nor did he sound the danger signal. Thereafter, the port stern corner of the ISSAQUENA and the port compartment of the lead port barge of the SWEET collided and later the bow rake of the port rear barge of the SWEET collided with the port stern of the ISSAQUENA.
 
 
 4
 The SWEET admitted her negligence and fault. The only issue, therefore, was whether the ISSAQUENA was also negligent and whether its fault was a proximate and concurrent cause of the accident.
 
 
 5
 The District Court held that the captain of the ISSAQUENA was negligent because of statutory fault in failing to deny the request for permission to pass made by the SWEET, and by his failure to sound the danger signal. The statute (the Western Rivers Rules), 33 U.S.C. Sec. 347(b), requires that the overtaken vessel sound the danger signal of not less than four blasts of her whistle if it appears that it is not safe for the overtaking vessel to attempt to pass at that time.[2] The Trial Court also found negligence in failure to comply with Coast Guard Regulations Sec. 95.17 (33 C. F.R. Sec. 95.17)[3] which requires the vessel being overtaken to answer a passing signal of the overtaking vessel either by assenting with the same number of blasts, or dissenting with the danger signal. The Trial Judge felt-and we agree-that the ISSAQUENA's captain should have dissented from the passing and should have sounded the danger signal since he conceded it was unsafe for the SWEET to attempt to pass him. The ISSAQUENA's captain therefore violated both the statutory rule and the Coast Guard regulations.
 
 
 6
 The District Judge also found that the ISSAQUENA's captain crowded upon the course of the overtaken vessel in violation of the statutory rule in 33 U.S.C. Sec. 347(b) and that the crowding upon the course of the SWEET proximately contributed to the collision. This finding is sharply disputed by defendant, and though the testimony is conflicting, there is evidence in the record upon which the District Court could properly make such a determination.
 
 
 7
 It is clear that this case must turn on its facts and that the facts have been found by the Trial Judge adverse to the contentions of the defendant. We have said before-and must repeat again-that we do not retry these cases in the appellate court. And unless we have "a definite and firm conviction that a mistake has been committed" by the District Court, we must affirm his findings of fact under the clearly erroneous rule, Rule 52(a) of the Federal Rules of Civil Procedure. See McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20 (1954); Chaney v. City of Galveston, 5 Cir., 1966, 368 F.2d 774, 776; Horton & Horton, Inc. v. T/S J. E. Dyer, 5 Cir., 1970, 428 F.2d 1131, 1135; Cenac Towing Co. v. Keystone, 5 Cir., 1968, 404 F.2d 698, 701-702. There was substantial evidence in the record apparently credited by the Trial Judge to support his findings. Though the case is a close one on the facts, since the SWEET's negligence was admitted, we cannot say, however, after a careful examination of the record that the District Judge's findings are clearly erroneous.
 
 
 8
 We have also viewed the facts in light of the legal arguments made by appellant that the major-minor fault rule would more aptly fit the present situation, that the SWEET had the last clear chance to avoid the accident, and that the SWEET assumed the risk of collision when it entered the narrow channel which was being flanked by the lengthy tow of the ISSAQUENA. None of these contentions convinces us that the Trial Court was in error.
 
 
 9
 Defendant also contends that the detention damages of the SWEET allowed by the Court should be reduced because of the so-called "profit element" contained therein. We believe, however, that the ruling of the Court below was correct in this regard and fully substantiated by the record.
 
 
 10
 Affirmed.
 
 
 
 [1]
 Where the fault of both vessels causes the collision, damages are divided, that is, each bears helf the total damage. See Catharine v. Dickinson, 58 U.S. (17 How.) 170, 177-178, 15 L.Ed. 233 (1855); Gilmore and Black, The Law of Admiralty (1957 ed.) Sec. 7-4, p. 402
 The District Court cited The Pennsylvania v. Troop, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1874) in support of his finding of mutual fault and dividing of damages between the parties, irrespective of the degrees of fault. The Pennsylvania is of special applicability here since it relates to the presumption which results when it is shown that a vessel has been guilty of statutory fault before a collision. We discuss statutory fault of the ISSAQUENA later in this opinion.
 
 
 [2]
 "(b) When one steam vessel is overtaking another steam vessel, so as to involve risk of collision, and the overtaking vessel shall desire to pass on the right or starboard side of the other vessel, she shall give, as a signal of such desire, one distinct blast of her whistle, and if the overtaken vessel answers with one blast, shall direct her course to starboard; or if the overtaking vessel shall desire to pass on the left or port side of the other vessel, she shall give as a signal of such desire, two distinct blasts of her whistle and if the overtaken vessel answers with two blasts, shall direct her course to port. However, if the overtaken vessel does not think it is safe for the overtaking vessel to attempt to pass at that time, she shall immediately so signify by giving several short and rapid blasts of her whistle, not less than four, and under no circumstances shall the overtaking vessel attempt to pass until such time as they have reached a point where it can be safely done, and the overtaken vessel shall have signified her willingness by blowing the proper signal, two blasts for the overtaking vessel to pass on the port side, one blast to pass on the starboard side, which signal shall be answered with a similar signal by the overtaking vessel before passing. After an agreement has been reached the overtaken vessel shall in no case attempt to cross the bow or crowd upon the course of the overtaking vessel."
 
 
 [3]
 Coast Guard Regulations Sec. 95.17 reads as follows:
 "When two steam vessels are in the overtaking situation, it is the duty of steam vessel being overtaken to answer immediately a passing signal of the overtaking steam vessel, either by assenting with the same numbers of blasts or by dissenting with the danger signal."