**MID–AMERICA TRANSPORTATION COMPANY, INC., Appellant,**

v.

**NATIONAL MARINE SERVICE, INC., and M/V NATIONAL PROGRESS, Her Engines, Boilers, etc., Appellees.**

**No. 73–1347.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1973.

Decided June 12, 1974.

Rehearing and Rehearing En Banc Denied July 10, 1974.

Before GIBSON and ROSS, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

Mid-America Transportation Company, Inc. invoked the admiralty and maritime jurisdiction of the district court, pursuant to Fed.R.Civ.P. 9(h), to recover for damage to its barge MAT–75, and the cargo carried therein, allegedly caused while in the tow of the M/V National Progress, a tug owned by National Marine Service, Inc., en route from St. Paul, Minnesota to St. Louis, Missouri on the Mississippi River. The court found for National Marine Service, and Mid-America appeals from the judgment entered. For convenience we will hereinafter refer to the barge owner as the plaintiff or the "barge," and to the appellees, both the Motor Vessel National Progress and its owner and operator National Marine Service, Inc. (the interests of which are identical), jointly as the defendant or the "tug."

On September 25, 1970 the fully loaded MAT–75 was placed in the tow with eight other barges of the M/V National Progress at St. Paul, Minnesota. The barge was in level trim, drawing nine feet, and remained so until the early morning hours of September 30. At midnight September 29, when the tug and its tow were just upstream of Lock 19 on the Mississippi, all was normal; the Captain went off duty and turned the helm over to Pilot Crawford. One or one and a half hours later (some four or five miles downstream) Captain Self was alerted that the MAT–75 was taking water. It had taken so much water, in fact, that one of its buoyancy tanks was filled to the level of the river and its stern was awash whenever the tow moved forward. From this evidence, and that of the damage to the hull, the trial court inferred that a grounding had occurred. No evidence was introduced, however, to show that specific

Joseph A. Murphy, St. Louis, Mo., for appellant.

James W. Herron, St. Louis, Mo., for appellees.

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

acts of negligence had caused the grounding, or that it occurred out of the channel or on a known obstruction.

The defendant's principal witness was Captain Self, who was in his cabin at the time in question and could offer no testimony as to the time, place or cause of the grounding. He speculated that a rock from a dike may have been pulled into the channel by the current and struck by the barge, but he admitted that the channel was sought to be maintained by the Corps of Engineers at a minimum depth of twelve feet. No unusual conditions of current, wind or weather were shown to exist at the general time and place of the occurrence. Captain Self was the only member of the tug's crew to testify at trial.

The crew of the National Progress attempted to pump out the barge, but by morning they had made no headway on the water level with their small pumps; the tug's salvage crew was called and by 7:00 P.M. September 30 the buoyancy tanks had been pumped and repaired, and the downriver journey continued. The MAT–75 was delivered to the Universal Barge Company in St. Louis at 5:30 A.M. October 2; insubstantial amounts of water were then in the buoyancy tanks. On October 5, however, a salvage crew hired by the barge pumped five feet of water out of one buoyancy tank, three feet out of another, and made further repairs. The grain was removed October 9 and transferred to another barge; two conical columns of wet grain were left standing in the cargo hopper. These extended from the floor of the hopper to deck level. Wet grain also covered the aft floor of the hopper, inclining toward the stern.

The trial court concluded that the MAT–75 was grounded and damaged while in the tow of the National Progress some time between midnight on September 29, 1970, and 1:00 A.M. to 1:30 A.M. on September 30. But the court was "unable to determine the object on which the barge was grounded, [or] the specific time and the location of the grounding." In addition the court further found that it was "unable to determine either the cause or source of the water which damaged the grain or the time at which such damage occurred," and, consequently, "that plaintiff has not proven that the damage to the grain * * * was caused by" the negligence of the tug. The opinion of the trial court is reported at 356 F.Supp. 1358 (E.D.Mo.1973).

■ We will consider separately the damage to the barge and that to the grain. With respect to liability for damage to the barge the case is *sui generis*. The testimony does not disclose where, when, or how the barge grounded. In this situation the plaintiff-barge relies heavily on an asserted presumption, namely, that from the grounding of the barge while in tow "a presumption of negligence arose on the part of the Defendant." The defendant-tug, on the other hand, asserts that "[n]o presumption of negligence arose from proof that the [b]arge * * * struck a submerged object or 'grounded' while in * * * tow * * *." No proofs of specific negligence on the part of the tug were made by the barge; and the trial court, rejecting the argued "presumption of negligence" on the part of the tug, and finding as well that the tug was not under a duty, in the circumstances presented, to "explain away any presumption of negligence on its part," held for the defendant on the issue of liability for damage to the barge. After careful review of the record we conclude that the court's finding, that there was not sufficient evidence that the circumstances surrounding the grounding required the tug to explain the grounding, was clearly erroneous.[1] We reverse on this issue.

■ The law concerning contracts of towage has been settled in an abundance

---

[1]. Fed.R.Civ.P. 52(a); McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); Mid-America Transp. Co. v. Rose Barge Line, Inc., 477 F.2d 914 (8th Cir. 1973).

of cases. The tug, neither an insurer nor a common carrier, is under a duty to exercise the reasonable care and maritime skill that prudent navigators employ in performing similar services, and the burden of proving negligence is on the party that asserts it. Stevens v. The White City, 285 U.S. 195, 202, 52 S.Ct. 347, 76 L.Ed. 699 (1932); Hart v. Blakemore, 410 F.2d 218 (5th Cir. 1969).

With respect to the grounding cases, the position of the grounded vessel at time of striking is, without more, of paramount importance. If she is outside the channel she has left it at her peril, and her grounding will not be excused on the argument that, possibly, her obstruction was unknown.[2] If she is inside the channel and strikes an unknown obstruction it is equally settled that she is not presumed to be negligent[3] but, *per contra*, if the object in the channel be known, and nevertheless struck, her negligence may be presumed.[4]

The tug concedes as much. It contends, however, that "a presumption of negligence arises only if the evidence shows: (1) The grounding occurred outside the channel, or (2) occurred on a known obstruction in the channel." It argues that "[a]bsent such proof, the mere fact of grounding gives rise to no presumption."

What is overlooked here is that the circumstances presented may be such as to require the tug to show a reasonable explanation for the accident. The rule was expressed at least as early as in The Steamer Webb, 81 U.S. (14 Wall.) 406, 20 L.Ed. 774 (1871). The Shooting Star was under tow from Portsmouth, New Hampshire to New York City and went aground in a fog 3⅓ miles south of the proper course. The Court held:

> The burden is always upon [the plaintiff] to show * * * that there has been negligence * * *. Unlike the case of common carriers, damage sustained by the tow does not ordinarily raise a presumption that the tug has been in fault. * * * But there may be cases in which the result is a safe criterion by which to judge of the character of the act which has caused it. Had the ship in this case been towed upon a shoal ten miles [off-course], it cannot be doubted that the fact of the stranding at such a place, would, in the absence of explanation, be almost conclusive evidence of unskilfulness or carelessness in the navigation of the tug. * * * At least [it] would be sufficient to cast upon the claimants of the tug the burden of establishing some excuse * * *.

In the present case the departure from the true course was not so great, but it was enough to devolve upon the tug the duty of explanation.

81 U.S. at 414.

The same thought *i. e.*, the duty of coming forward with explanation, has found expression in many cases,[5] but in none perhaps more clearly than in Bisso v. Waterways Transportation Co., 235 F.2d 741 (5th Cir. 1956), wherein it was held as follows:

> This brought into play the sensible rule that, even though the engagement is in contract so that the duty of the tug toward the tow is that of due care only, with the consequent burden on the tow of establishing negligence [citing cases], a stranding which oc-

2. The Steamer Webb, 81 U.S. (14 Wall.) 406, 20 L.Ed. 774 (1871); The Arlington, 19 F.2d 285 (2nd Cir. 1927); *see* Humble Oil & Ref. Co. v. Tug Crochet, 422 F.2d 602 (5th Cir. 1970); Bisso v. Waterways Transp. Co., 235 F.2d 741 (5th Cir. 1956); The Anaconda, 164 F.2d 224 (4th Cir. 1947); Mid-America Transp. Co. v. Rose Barge Lines, Inc., 347 F.Supp. 566 (E.D. Mo.1972) (⅔rds out of channel).

3. The Pierrepont, 42 F. 687 (N.D.N.Y.1890).

4. Gypsum Packet Co. v. Horton, 68 F. 931 (S.D.N.Y.1895) (dictum).

5. *E.g.*, The Anaconda, 164 F.2d 224, 228 (4th Cir. 1947); The Evelyn v. Gregory, 170 F. 2d 899, 901 (4th Cir. 1948); Humble Oil & Refining Co. v. Tug Crochet, 422 F.2d 602, 606 (5th Cir. 1970).

curs under circumstances which ordinarily results in no such casualty puts on the tug the obligation of some satisfactory explanation. "When an accident occurs to the tow the action is ex delicto and the burden is on the tow to show negligence on the part of the tug. However, circumstances may create a strong presumption of negligence. In that event the burden is on the tug to rebut the prima facie case or, at least, to show a reasonable excuse for the accident other than its own negligence."

235 F.2d at 744.

In the situation before us we have a tug, with the tow, routinely proceeding down a depth-maintained channel in the Mississippi river until a short time before evidence of grounding appeared. We take judicial notice of the fact that this channel is navigated daily in complete safety by many vessels. The Captain of a tug, this or other, is under a continuing duty to know where his vessel is at all times, and he, or those under him, are (or should be) in possession of all other pertinent facts relating to the voyage. Under these circumstances, not present in *Soriano* [6] or other like cases relied upon by the tug, upon proof of grounding it is the duty of the tug to come forward to establish that she was in the channel and did not hit a known obstruction therein or to furnish other exculpatory explanation (*e. g.*, act of God) for the grounding. In so holding we do no violence to Stevens v. The White City, *supra*. The burden of proof has not shifted,[7] but the tug is charged with the duty of producing evidence that her fault did not cause the grounding. In so apportioning the burden we chart no new course. "It is often a controlling factor," as Judge Learned Hand put it, "in deciding where to throw the burden of producing evidence—and obviously it ought to be—that the proper party to charge is he who alone could discover the truth."[8]

On the facts before us we think the tug has not discharged its duty to produce evidence. Because the matter is one of first impression in this circuit, however, we will not direct entry of judgment for the plaintiff-barge. There will be further proceedings at which the tug will be given an opportunity (subject to rebuttal by the barge) to carry

6. United States v. Soriano, 366 F.2d 699 (9th Cir. 1966).

7. The burden of proof in a litigation, wherever the law has placed it, does not shift with the evidence, and in determining whether petitioner has sustained the burden the question often is, as in this case, what inferences of fact he may summon to his aid. In answering it in this, as in others where breach of duty is the issue, the law takes into account the relative opportunity of the parties to know the fact in issue and to account for the loss which it is alleged is due to the breach. Since the bailee in general is in a better position than the bailor to know the cause of the loss and to show that it was one not involving the bailee's liability, the law lays on him the duty to come forward with the information available to him. [citing cases] If the bailee fails it leaves the trier of fact free to draw an inference unfavorable to him upon the bailor's establishing the unexplained failure to deliver the goods safely. [citing cases]

Whether we label this permissible inference with the equivocal term "presumption" or consider merely that it is a rational inference from the facts proven, it does no more than require the bailee, if he would avoid the inference, to go forward with evidence sufficient to persuade that the non-existence of the fact, which would otherwise be inferred, is as probable as its existence. It does not cause the burden of proof to shift, and if the bailee does go forward with evidence enough to raise doubts as to the validity of the inference, which the trier of fact is unable to resolve, the bailor does not sustain the burden of persuasion which upon the whole evidence remains upon him, where it rested at the start. [citing cases]

Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 110–111, 62 S.Ct. 156, 161, 86 L.Ed. 89 (1941).

Although the above was held with respect to a bailment situation, the principle therein enunciated is not so narrowly confined. *See* 9 J. Wigmore, On Evidence §§ 2487–89 (3rd ed. 1940) and cases therein cited.

8. Sternberg Dredging Co. v. Moran Towing & Transp. Co., 196 F.2d 1002, 1006 (2nd Cir. 1952).

such burden. If it fails to do so, the District Court may draw an inference of fact unfavorable to it. On the other hand, if the tug does come forward with evidence sufficient to cast doubt upon the validity of the inference arising from the facts, the barge will not have sustained the burden of ultimate persuasion resting upon it from the start.

In addition to the damage to the barge, some 221,000 pounds of the grain cargo were found to have been damaged by moisture. It is the principal claim of the plaintiff-barge that this damage was caused by careless placement of pumps used in pumping out the water taken aboard due to the grounding, in that the pumps were so placed as to discharge directly onto the hatch covers, from whence the water entered the cargo compartment. The conical shape of damaged grain supported in part this theory, as well as the hearsay (though properly rejected) statement of one Goskie, a member of the tug's salvage crew. The tug, on the other hand, presented eye-witness testimony that its pumps were so placed that, rather than discharging onto the hatch covers, they actually discharged over the side. Also, with respect to the circumstantial nature of the conical shape of the damaged grain, evidence was presented that in the interval after the barge had left the tow of defendant's vessel it had had substantial pumping by the D. J. Marine Service, hired by plaintiff for such purpose. In addition to the circumstantial and eye-witness testimony, both sides employed the testimony of marine surveyors who, in general, utilizing as well the position of other water-damaged grain, presented their respective theories. It would serve no precedential or other purpose to point out the various conflicts in the evidence, or the various inferences that might be drawn therefrom. The District Judge, after hearing and considering the evidence, concluded that the plaintiff had not carried its burden of proof, that "Due to the lack of competent evidence the Court is unable to determine either the cause or source of the water which damaged the grain or the time when such damage occurred." We agree.

For the reasons indicated the judgment of the District Court with respect to the issue of liability for damage to the barge MAT–75 is reversed and the case remanded for further proceedings consistent herewith. The judgment with respect to grain damage is affirmed.