401 F.Supp. 15 (1975)
THREE RIVERS ROCK COMPANY, Plaintiff,
v.
The M/V MARTIN, etc., et al., Defendants.
No. 74-594.
United States District Court, E. D. Missouri, E. D.
September 30, 1975.
*16 Lucas & Murphy, St. Louis, Mo., for plaintiff.
Steven R. Glickstein, Goldstein & Price, St. Louis, Mo., for defendants.

OPINION
NANGLE, District Judge.
In this action plaintiff Three Rivers Rock Company seeks to recover damages for the injuries allegedly sustained by its tugboat, M/V Fair Lady, through the negligence of defendant Janey Towing Company, Inc. Plaintiff asserts that the M/V Martin, a towboat owned by defendant, struck the M/V Fair Lady as it lay grounded on a sandbar and thereby caused it to sink.
Suit was brought originally against the M/V Martin, her engines, tackle, equipment, etc. and Gilco Marine Transport. By amended complaint, Janey Towing Company, Inc. was added as a party defendant. On May 27, 1975, by stipulation of the parties, the complaint against the M/V Martin and Gilco Marine Transport was dismissed with prejudice.
Having tried the case sitting without a jury the Court makes the following findings of fact and conclusions of law:

FINDINGS OF FACT
1. Plaintiff Three Rivers Rock Company was a corporation and owner and operator of the M/V Fair Lady at all times relevant herein.
2. Defendant Janey Towing Company, Inc. was a corporation and the owner and operator of the M/V Martin at all times relevant herein.
3. The M/V Fair Lady was a steel welded tugboat, sixty-five feet long, twenty-one feet high and five feet deep. The M/V Martin was a towboat ninety-five feet long, twenty-five feet wide with a depth of fourteen feet.
4. On October 3, 1973, the M/V Fair Lady, piloted by Freddy H. Moran, struck a sandbar at Mile 855 on the Lower Mississippi River. This accident was due to pilot error in rapidly rising water. The boat began to take on water and partially sank.
5. An accident report was filed with the United States Coast Guard on January 11, 1974 describing the damages suffered by the M/V Fair Lady in this accident as a total loss.
6. A Local Notice to Mariners prepared by the Coast Guard on October 11, 1973 listed the M/V Fair Lady as partially submerged at Mile 854 and advised caution.
7. Soon after the accident, Three Rivers contacted Cairo Marine Service, Inc. to seek advice on the cost and feasibility of salvage. Robert J. Michel, an employee of Cairo, undertook a survey of the M/V Fair Lady. Michel inspected the boat on October 3, 1973 and at various times thereafter up to October 15, 1973. He spoke to persons involved. No attempt was made to raise or salvage the boat allegedly because of the high water conditions. Plaintiff contacted no other salvage service for advice.
8. Ralph F. Clark, President and principal surveyor for Marine Loss Control, Inc., who has been a marine surveyor since 1962 estimated the cost of raising the M/V Fair Lady as of October 24, 1975 at $22,500.00 to $25,000.00. Had the raising been done immediately, the cost would have been as low as $5,000.00. The total estimate for the raising and repairing of the M/V Fair Lady *17 given by Clark was not less than $61,950.00 as follows:

 Raising the vessel: $ 22,500.00
 Tow to nearest ship yard: 500.00
 Drydocking: 150.00
 Remove, repair, reinstall motors: 15,000.00
 Generator overhaul: 3,000.00
 Cleaning off mud and sand: 4,000.00
 Clean fuel tanks: 900.00
 Clean water tanks: 600.00
 Stripping of wooden materials: 6,000.00
 Remove and replace electrical
 circuits: 5,000.00
 Furnish and install pilot house
 gauges: 500.00
 Remove and replace galley equipment: 2,000.00
 New bunks, linens: 800.00
 Repainting: 1,000.00

9. This Court finds and accepts as an accurate estimate the estimate prepared by Clark. The Court rejects the accuracy of the estimate submitted by Michel.
10. The appraised value of the M/V Fair Lady as of March 6, 1973, approximately seven months prior to the events herein, was $48,000.00 to $50,000.00.
11. Michel tied a black oil drum, as a marker, to the starboard towknee of the boat; however, photographs of the M/V Fair Lady on October 15, 1973 show that the drum was no longer there. Michel also stated that he put a small light on the pilot house of the partially submerged boat. Again, the light does not appear in any of the photographs.
12. On October 24, 1975, the M/V Martin was traveling southbound on the Mississippi River pushing five loads. As it approached Mile 855, at approximately 5:30 a.m., it encountered three tows coming from the opposite direction. In order to avoid what appeared to be an impending collision, Captain Euwer of the M/V Martin steered the vessel to the starboard side. The collision with the tows was avoided but the lead barge in the M/V Martin tow, GMT 510, struck a sandbar. Captain Euwer determined that it was a sandbar that had been struck because of the height to which the barge was lifted. The crew of the M/V Martin proceeded to work the barge free of the sandbar and after so doing, the trip downstream to New Orleans continued. Captain Euwer testified that he saw no debris in the area which would have indicated that there was a sunken boat. He saw no wreck markers, no black oil drum, nor any sign of a partially submerged boat. Some time after the barge had been grounded on the sandbar, Captain Euwer was told that there might have been a sunken boat in the area. He made an indication in the logs of the M/V Martin as follows:
 Hit ground at mile #853 w/GMT 510 ...
 Note! Barges May have struck a sunken boat in
 same Location.
Captain Euwer was unaware of the Coast Guard notice concerning the M/V Fair Lady. The barge which struck the sandbar was not torn nor did it leak in any manner following the grounding. The only damage was to a fitting on the deck of the barge. Although there is some evidence from which one might infer that the M/V Martin struck the M/V Fair Lady, this Court finds that the M/V Martin did not strike the M/V Fair Lady.
13. Charles Gibson, an employee of the Corps of Engineers, was working near the site where the M/V Fair Lady lay. On the evening of October 23 or 24, 1973, Gibson saw the boat in its sunken position. There were no lights and no buoys on it. The following day, the M/V Fair Lady was nowhere to be seen but a grain barge was on a sandbar near the location where the M/V Fair Lady had been.

CONCLUSIONS OF LAW
1. This Court has jurisdiction over the parties and the subject matter of the suit is within its admiralty and maritime jurisdiction. 28 U.S.C. § 1333.
2. This Court has found that the M/V Martin did not strike the M/V Fair Lady. Although proof of a collision can be established by circumstantial evidence, see e. g., Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960), this Court is of the opinion that plaintiff has not met its burden. There was at least a twelve hour time period between the last sighting *18 of the M/V Fair Lady by Gibson and the appearance of the M/V Martin in the area. Furthermore, the fact that the barge suffered no substantial damage argues persuasively that it did not strike a steel welded tugboat. Because this Court finds that there was no collision, liability for any damages sustained by the M/V Fair Lady can not be imposed on defendant.
3. Even if we assume arguendo the M/V Martin did strike the M/V Fair Lady, it remains the conclusion of this Court that defendant is not liable. The Wreck Act, 33 U.S.C. § 409, provides that:
... it shall be the duty of the owner of such sunken craft to immediately mark it with a bouy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful ....
This Court has found that the M/V Fair Lady was not properly marked from October 15, 1973 onward, if not earlier. Accordingly, plaintiff was in violation of § 409. In The Pennsylvania, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1873), the Court held that
... when, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute.
This rule has been consistently followed. See, e. g., Complaint of Wasson, 495 F.2d 571 (7th Cir. 1974); Union Oil Company of California v. M/V Issaquena, 470 F.2d 875 (5th Cir. 1973); Petition of Long, 439 F.2d 109 (2nd Cir. 1971); Green v. Crow, 243 F.2d 401 (5th Cir. 1957); Kaiser v. Traveler's Insurance Co., 359 F.Supp. 90 (E.D.La.1973), aff'd 487 F.2d 1300 (5th Cir. 1974). This Court finds the rule applicable here. Plaintiff has failed to establish that the failure to mark could not have been the cause of the accident. United States v. Reliable Transfer Co., Inc., 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975) does not criticize the Pennsylvania rule as plaintiff contends. Rather it criticizes the rule relating to the equal division of damages in collision cases. As an example of the inequities of that rule the Court shows the result of the application of the equal damage rule in cases in which the Pennsylvania rule is applied.
4. That the M/V Martin may have been outside the channel at the time it struck the sandbar makes no difference to this Court's conclusions.
A vessel is entitled to the full reach of a navigable stream available to the line of high water, including muds along the shore. Jones Towing, Inc. v. United States of America, 277 F. Supp. 839 (E.D.La.1967).
See also, Reading Co. v. Pope & Talbot, Inc., 192 F.Supp. 663 (E.D.Pa.1961), aff'd. 295 F.2d 40 (3rd Cir. 1961). Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Company, 377 F.2d 724 (5th Cir. 1967) involved a collision between a barge and an off-shore drilling well. Mid-America Transportation Company, Inc. v. National Marine Service, Inc., 497 F.2d 776 (8th Cir. 1974) involved a suit for damages brought by a grain owner when the tug on which the grain was being carried grounded and entering water damaged the grain. These cases are distinguishable from the present case and do not lend support to plaintiff's position.
5. The Local Notice issued by the Coast Guard is insufficient to change this Court's decision. Giving notification to the Coast Guard of a wreck has been held not to relieve an owner of its duty under the Wreck Act. *19 Ingram Corporation v. Ohio River Company, 382 F.Supp. 481 (S.D.Ohio 1973), aff'd. 505 F.2d 1364 (6th Cir. 1974). Nor is a boat required to remember the location of a wreck. Kaiser v. Traveler's Insurance Co., 359 F.Supp. 90 (E.D.La. 1973), aff'd. 487 F.2d 1300 (5th Cir. 1974).
6. This Court found that the costs of raising and salvaging the M/V Fair Lady as of October 24, 1973, prior to the alleged collision by the M/V Martin, to exceed the value of the M/V Fair Lady. Therefore, assuming arguendo that the M/V Martin struck the M/V Fair Lady and that the Pennsylvania rule is not applicable, plaintiff suffered no damage.
In consequence, the Court will give judgment for defendants.