**CONSOLIDATED GRAIN & BARGE COMPANY, Plaintiff,**

v.

**HUFFMAN TOWING COMPANY, Defendant.**

**No. 84–2448C(B).**

United States District Court, E.D. Missouri, E.D.

Nov. 25, 1985.

John Halpern, Goldstein & Price, St. Louis, Mo., for plaintiff.

Frank Thackston, Jr., Lake, Tindall, Hunger & Thackston, Greenville, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

REGAN, District Judge.

This action, tried to the Court, to recover the substantial damages admittedly sustained by Consolidated Grain and Barge Company on January 4, 1984, when the lead barges in a tow of twenty loaded unmanned barges dived as they were being towed upriver by MV Janet Marie operated by Huffman Towing Company on the Mississippi River. The principal controverted issue is whether Consolidated adduced sufficient evidence to permit a finding of causal negligence on the part of Huffman's pilot, Captain Drury, without resort to speculation.

We first briefly state the admitted facts and those which, though not admitted or evidentially controverted, are supported by the evidence and the reasonable inferences to be drawn therefrom. On January 2, 1984, Consolidated barges KMZ–46, CGB–131, CB–41 and CGB–417B were taken in tow near New Orleans at Mile 126, Lower Mississippi River. At that time, in accordance with Huffman's customary practice, the crew members of the Janet Marie inspected the barges. They determined that the barges were floating on an even keel and in suitable condition for towage. The barges were again inspected at each watch change (the last very shortly before the accident) and found to be in good condition. We find that in all material respects, Consolidated's barges were seaworthy and that their condition neither caused nor contributed to cause the casualty.

As of January 3, 1984, the Janet Marie, which had commenced its journey with 16 barges, had 20 loaded barges in tow, arranged in four strings, each containing five barges. The accident in question occurred on the morning of January 4, 1984 at or near Mile 296, Lower Mississippi River after the tow had traveled without incident about 180 miles upriver. The day was clear with excellent visibility. When the tow of the Janet Marie, which was pushing the barges at full speed, reached a point adjacent to Catfish Point Light (Mile 296.2) three of the lead barges dove resulting in the substantial damage to Consolidated's barges and to the cargo on one of them.

On the day of the accident, the river at Mile 296 was marked by one red buoy which had been placed in the area in 20 feet of water by the U.S. Coast Guard on December 20, 1983. At that time, the river stage at the Red River Landing approximately six miles upriver was 45.41 feet. The red buoy marked the outer limits of the left descending side of the channel to the right descending bank. The water is shallow along the red buoy line and becomes progressively deeper going across river to the right descending bank. By January 4, 1984 the river stage at the Red River Landing had dropped about 10.5 feet. However, there is no evidence of the river stage at or near Catfish Point, in particular in that part of the navigable channel in which the accident occurred. On the date of the accident, the navigable channel was about 1500 feet wide. The starboard side of the tow was approximately 300 feet out from the red buoy line.

Consolidated concedes that the burden of proving negligence rests upon it, and that the mere fact its barges was damaged while in the control of Huffman is not sufficient, of itself, to sustain a finding of causal negligence. It argues that negligence may reasonably be inferred in the circumstances. Its principal reliance is upon an opinion expressed by Captain Drury both in his accident report (written Janu-

ary 5, 1984, one day after the accident) and in his deposition that the barges dove because they hit shallow water.

Although it may well be that Captain Drury could have navigated the tow in a deeper part of the channel, there is no substantial evidence from which we can find it was improper to run the channel where he did. So, too, although Captain Drury could have navigated in this area at half throttle, thus making it less likely that the barges would dive (if the water was sufficiently "shallow"), it is also true that by traveling at five miles an hour, he made less likely the build up of ice on the head of the tow. Hindsight, all based on the assumption that "shallow" water (of unknown depth) was in fact present at the place in question, does not justify a finding that Captain Drury failed to exercise reasonable care and maritime skill.

True, Captain Drury, who had been a pilot for a number of years, was aware that the loaded barges in tow would probably dive if they ran from deep into "shallow" water. However, although the water may have been shallow at the red buoy line, its depth some 300 feet out is a matter of speculation, as we pointed out at the trial.

Missing from Consolidated's proof is evidence from which we can reasonably find (1) that the unknown depth of the water at the place where the barges dove made it sufficiently "shallow" as compared to the depth of the water downriver as to pose a reasonably foreseeable danger that the loaded barges would be caused to dive, and (2) that Captain Drury either knew or should have known of the existence of such "shallow" water, and based on *such* knowledge failed to take reasonable precautions to avoid the known danger.

The initial "opinion" of Captain Drury as to the reason the barges dove was clearly not based on *facts* known to him prior to the accident. It was, at most, a guess as to which of several possible circumstances could have caused the barges to dive. An "opinion" of an expert is no better than the facts upon which it is based. In this case, Captain Drury's "opinion", based solely on the fact the barges dove (and which *assumed* the unknown fact of the depth of the water), is too slender a reed upon which to predicate a finding of negligence.

Consolidated cites cases supportive of the proposition that although the burden of proving the tower's negligence rests on the tow, where the damage to the tow occurs under circumstances which would not ordinarily cause the damage had the proper care been exercised, an inference of causal negligence is justified, in which event "the defendant bears the burden of coming forward with an explanation sufficient to rebut the inference." *Agri-Trans Corp. v. Peavey Co.,* 742 F.2d 1137 (8 Cir.1984); *Mid-America Transportation Co., Inc. v. National Marine Service, Inc.,* 497 F.2d 776 (8th Cir.1974).

In our judgment, these and other cited cases are distinguishable, and do not obviate the necessity for Consolidated to prove negligent navigation on the part of Captain Drury. We do not read *Agri-Trans,* supra, on which *Consolidated* relies, as holding that the rule not only is an aid in establishing negligence, but *relieves* the tow of the burden of demonstrating negligence in the first instance. In that case, the structural damage sustained by the barge was of a nature which would support an inference it collided with a large, solid, rounded stationary object, and this circumstantial evidence that such a collision had occurred would permit the conclusion that such a collision would not ordinarily occur absent negligence on the part of the tug. In the instant case, by contrast, both Consolidated's expert witness and Captain Drury testified that the barges could dive for reasons unrelated to negligence on the part of the tower. There is no evidence that Captain Drury knew or should have known the depth of the water into which the lead barges dove or the depth of the water ahead or behind that portion of the river. And certainly, absent evidence not merely of the depth of the water but of Captain Drury's knowledge or presumptive knowledge thereof, a finding that he failed to

exercise due care in navigating the Janet Marie would be sheer speculation.

The casualty giving rise to this action was unfortunate, and Consolidated's damages were sustained without fault on its part. However, Huffman was not an insurer or a common carrier. In our judgment, Consolidated has not sustained its burden of establishing that Captain Drury failed to exercise due care under the then existing circumstances.

The foregoing Memorandum Opinion and Order constitutes our findings of fact and conclusions of law. Judgment will be entered for defendant.